**Barry ADAIR, Appellant–Respondent,**

v.

**Darla ADAIR, Respondent–Appellant.**

**Nos. WD 61875, WD 61887.**

Missouri Court of Appeals,
Western District.

Jan. 20, 2004.

Michael Paul Bandre, Overland Park, KS, for appellant-respondent.

Nancy Agnes Beardsley, Independence, for respondent-appellant.

RONALD R. HOLLIGER, Judge.

Barry Gene Adair ("Husband") and Darla Beth Adair ("Wife") cross appeal a judgment of dissolution of marriage entered on July 26, 2002, and amended thirty days later to dispose of property omitted from the original decree. Husband contends that the trial court's division of property was so disproportionate as to constitute an abuse of discretion. He secondly contends that the trial court erred in determining the amount of maintenance that Wife would receive. Finally, Husband contends that the trial court erred in ordering him to pay a portion of Wife's attorney fees. Wife cross-appeals, contending that the trial court should not have terminated her maintenance automatically in three years. We affirm the judgment but modify it pursuant to Rule 84.14 to eliminate the provision terminating Wife's maintenance payments automatically in the future.

The parties were married on March 30, 1979. During the marriage, they separated during several periods, with the final period beginning on June 9, 2001. There was evidence that Husband had engaged in an affair with a female co-worker toward the end of the marriage, though the

Husband disputed whether that liaison began prior to the parties' separation.

Husband filed his petition seeking dissolution of the parties' marriage on September 4, 2001. Wife filed her answer and counter-petition on September 25, 2001. The matter proceeded to a three-day trial beginning June 24, 2002. Following trial, the court entered judgment on July 26, 2002. After the entry of that judgment, it came to the trial court's attention that certain property had been left out of the property division. An amended judgment was subsequently entered on August 22, 2002, to resolve that issue.

The parties' two most significant assets were a joint bank account, containing approximately $98,000, and the marital residence. During the parties' separation, they split the bank account evenly between themselves. They also sold the marital residence, evenly dividing the $36,000 profit obtained from the sale. Wife placed her share of the proceeds into savings, while Husband dissipated his share. The trial court found that the parties held assets in the amount of $127,099 at the time of trial. It also found that Husband had squandered assets, in the form of the paychecks received during the separation, in the amount of $35,000, and had given away additional funds in the amount of $8,900.

In its initial division of marital property, Husband was awarded property equaling a value of $56,104 and credited against him $43,900 to account for the assets he had squandered or given away to third parties. Wife was awarded property in the amount of $70,995. The trial court also entered a judgment in favor of Wife and against Husband in the amount of $20,200, to equalize the property division. Taking into account that equalization payment, the resulting award to Husband was $79,804 (forty-seven percent) while the award to Wife was $91,905 (fifty-three percent).

The amended judgment made the same property allocations and also disposed of a bank account containing approximately $19,000 that had been omitted in the original judgment. Those funds were the remainder of $30,000 given to Wife by her father. Wife had originally placed those funds into a joint bank account with Husband, but had later closed that account and placed the remaining funds into an account in her own name. The trial court ultimately awarded those funds to Wife. The inclusion of that account raised the total property divided in the judgment to $189,999. Of that amount, Husband was awarded $79,804 (forty-two percent), while Wife was awarded $110,195 (fifty-eight percent).

During the marriage, Husband was gainfully employed, and testimony established that he had earned at least $100,000 per year in the three years prior to trial. Husband testified that he anticipated earning approximately $98,000 in 2002. He had difficulty accounting for his expenses, as he had apparently been cashing his paychecks instead of depositing them into an account. This stood in stark contrast to the meticulous record keeping he maintained during the marriage.

The evidence at trial showed that Husband started to spend money lavishly after the separation. He took five vacations with his paramour between the separation and the date of his testimony at trial. He gave generous gifts of clothing and jewelry to that individual, as well as other gifts to her children. Husband also gave money to his father.

As indicated above, Husband depleted his share of the joint bank account and the proceeds from the sale of the marital residence. Despite having spent nearly $60,000, he could not account for what purpose those expenditures were made.

Nor could Husband account for his wage earnings during the separation because he cashed his paychecks. The trial judge found in its amended judgment that "[g]iven the amount of Petitioner's income and expenses, he should have accumulated over $35,000 during the separation. Petitioner has given $8,900 away since the separation. Petitioner has withdrawn $120,193.63 from his bank accounts during eight months of the separation."

Wife was not employed outside the home during the marriage. By the end of trial, Wife had obtained part-time employment, working twenty hours per week during the weekends as a radiology assistant, earning approximately $600 per month. She was also taking eight hours of classes per week as a prerequisite to entering schooling to become a radiology technician. It was uncertain whether Wife would be able to enter that program, however, given the surplus of applicants compared to openings in the program. Wife also took time to babysit her grandchild during weekdays, without compensation.

Husband voluntarily supplied Wife with a monthly allowance during the time of separation. After separation, Wife lived in the marital home while Husband made the house payments, apparently until that residence was sold, as discussed previously.

Wife presented evidence that her monthly expenses were $2,726 per month. The trial court considered Husband's evidence that $343 of those monthly expenses were car payments that would end in the near future. Based on that evidence, the court found that Wife's reasonable expenses were $2,403 per month. The trial court awarded Wife modifiable maintenance of $2,400 per month, but that the maintenance would terminate after three years. Husband was also ordered to pay $10,000 towards Wife's attorney fees.

## STANDARD OF REVIEW

Our standard of review in a dissolution action is the same as any other bench-tried case, as articulated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm unless we conclude that the trial court's judgment is not supported by substantial evidence, is against the weight of the evidence, or misstates or misapplies the law. *Id.* We set aside a judgment as being against the weight of the evidence only with caution and a firm belief that the judgment is wrong. *In re Marriage of Lewis*, 808 S.W.2d 919, 922 (Mo.App.1991). We defer to the trial court's credibility findings, viewing the evidence in the light most favorable to the judgment. *See id.*

## DISCUSSION

Husband raises three points on appeal from the judgment below. He first contends that the trial court erred in its division of marital and non-marital property, in that the property division was so weighted in favor of Wife to constitute an abuse of discretion. In his second point on appeal, he argues that the trial court erred in awarding maintenance in the amount of $2,400 per month to Wife because that sum exceeded her reasonable needs, after taking into account her capacity for employment. Third, Husband claims that the trial court erred in awarding Wife attorney fees in the amount of $10,000, taking the position that the award was an abuse of discretion, due to the amounts Wife received in the property division as well as the maintenance award. Wife cross-appeals, contending that the trial court erred in including a provision in the maintenance award that it would terminate at the conclusion of three years. As both parties raise issues concerning the maintenance award, we will take up Husband's points on appeal out of order, so that we may

address the maintenance issues consecutively.

## I. The Property Division

■ As indicated above, after taking account all assets and the property equalization payment, Husband received forty-two percent in the property division, while Wife received fifty-eight percent. Husband contends that this unequal distribution of assets constituted an abuse of discretion.

Section 452.330.1, RSMo, provides that the court consider all relevant factors in dividing marital property including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

■■ We note, at the outset, that the trial court is not required to make an equal distribution of property. *See Thill v. Thill*, 26 S.W.3d 199, 208 (Mo.App.2000) (affirming a sixty-forty division of marital property). That distribution need only be fair. *Id.* It must also take into account the statutory factors outlined in Section 452.330, RSMo 2000. We will disturb a property award on grounds that it was unfair only when we conclude that it is so heavily weighted towards one party that it constitutes an abuse of discretion. *Thill*, 26 S.W.3d at 209.

Misconduct by a spouse prior to the dissolution is a relevant factor for the trial court to consider in dividing marital property. § 452.330.1(4), RSMo. Evidence established that Husband had engaged in an affair with a female co-worker toward the end of the marriage. Wife contended that the affair began prior to the parties' final separation, but Husband disputed that claim. While the trial court did not make an express finding on the issue, it did hold that Husband had engaged in financial misconduct during the marriage, and relied upon that finding in its property division. Specifically, the trial court found that Husband could not account adequately for $60,000 in marital assets he had at the time of the separation, that he gave away $8,900, and that he should have accumulated another $35,000 from his wages during the separation.

Here, Husband does not raise any dispute regarding the trial court's finding of misconduct. Instead, he argues that he was unfairly penalized for that misconduct. Essentially, he argues that he was penalized twice—first, in the original judgment, by being held responsible for squandering or giving away $43,900 in marital assets, and again, in the amended judgment, through Wife receiving all of the $19,000 account that was not divided in the original judgment.[1]

Here, Husband's misconduct took multiple forms. First, as expressly mentioned in the judgment, Husband had committed misconduct by squandering marital assets.

---

1. As the moneys in the account were received during the marriage, the trial court correctly found that those funds were presumed to be marital property under section 452.330.2, RSMo. While Wife disputes the classification of that account as marital property, she conceded at oral argument that the funds were properly treated as marital property.

Second, there was evidence that Husband had contributed to the breakdown of the marriage by entering into an extramarital affair. His misconduct was significant and extensive. It would also appear that the $43,900 that the trial court attributed to Husband's squandered share of the marital property was a substantially smaller amount than the record would have supported. As a result, we cannot say that the trial court abused its discretion in the property division set forth in its judgment.

■ Husband also raises an argument that the trial court's final property division was an abuse of discretion because the disposition of the $19,000 bank account did not reflect the property division ratio in the original judgment. As the original judgment did not dispose of all the marital assets, it was not a final judgment. *Wagner v. Wagner*, 823 S.W.2d 523, 524 (Mo. App.1992). Until the entry of a final judgment, the trial court retained jurisdiction and could "upon proper notice, vacate, modify or correct any part of the decree entered." *Pendleton v. Pendleton*, 532 S.W.2d 905, 906 (Mo.App.1976). *See also Reynolds v. Reynolds*, 6 S.W.3d 183, 185 (Mo.App.1999). In our view, the trial court was not obligated to maintain the same percentage ratios for the property division as contained in the original decree. Indeed, it may reallocate property in a manner different from the original judgment. *See, e.g., Kahn v. Kahn*, 839 S.W.2d 327, 334 (Mo.App.1992). The amended judgment changed the property division, and it superceded the original judgment in all respects. We hold it proper to look only to that final judgment in determining whether the property division was an abuse of discretion.

■ The trial court did not abuse its discretion in awarding the $19,000 bank account to Wife. Neither that action, nor the unequal property division is clearly against the logic of the circumstances faced by the trial court. Nor is that division "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Williams v. Williams*, 55 S.W.3d 405, 411 (Mo.App. 2001) (quoting *Wright v. Wright*, 1 S.W.3d 52, 57 (Mo.App.1999)). Point denied.

## II. The Attorney Fees Award

■ Husband's third point on appeal concerns the provision of the judgment ordering him to pay $10,000 of Wife's attorney's fees. In most circumstances, the parties to a dissolution proceeding are responsible for their own attorney fees. *Silcox v. Silcox*, 6 S.W.3d 899, 905 (Mo. banc 1999). In such proceedings, however, trial courts are authorized to award reasonable attorney fees pursuant to Section 452.355.1, RSMo. In making that award, the trial court must consider all relevant factors, not limited to: the parties' financial resources, the merits of the case, and the actions of the parties during the course of the litigation. *See* § 452.355.1. As with the previous issue, the trial court is vested with broad discretion in making an attorney fees award, and we will reverse only if the trial court has abused that discretion. *See Silcox*, 6 S.W.3d at 905.

The essence of Husband's argument is that it was an abuse of discretion for the trial court to award Wife her attorney fees in light of the property division, in which she received a disproportionate share, and the $2,400 per month maintenance award. He contends that Wife is readily able to pay for her own attorney fees from the property awarded and the maintenance she will receive under the judgment.

■ An award of attorney fees to a party is not an abuse of discretion merely because that party receives the benefit of a more-than-equal share in the division of

property. *See id.* Instead, all relevant factors must be considered in evaluating whether the trial court acted within its discretion in awarding attorney fees to a party.

Here, even considering the maintenance award, there is a significant disparity in the parties' monthly earnings that the trial court could take into consideration in assessing the propriety of an award of attorney fees. In addition to Husband's misconduct during the marriage itself, there was also evidence that Husband's conduct during the litigation increased Wife's attorney fee expenses. The court could properly consider that conduct in determining whether to award attorney fees. *See Bauer v. Bauer*, 38 S.W.3d 449, 457 (Mo. App.2001). We also note that the trial court did not award Wife all of her attorney fees. She requested fees in the amount of $17,497.53, and Husband was made responsible for only $10,000 of that amount.

In our view, the attorney fee award to Wife did not constitute an abuse of discretion. The earning power of the parties, together with Husband's misconduct, provided adequate grounds for the trial court's partial award of attorney fees to wife. We, therefore, deny Husband's third point on appeal.

## III. The Amount of the Maintenance Award

■ We now return to Husband's second point on appeal, which contends that the trial court erred in awarding maintenance to Wife in the amount of $2,400 per month. It is not disputed that Wife's reasonable monthly expenses equal $2,403. Husband does not claim that maintenance should not have been awarded at all. Instead, he argues that the amount awarded exceeded Wife's reasonable needs and failed to take into consider-

ation Wife's income-earning ability. Again, we will reverse that award only if we conclude that the trial court abused its discretion in granting or setting the amount of maintenance. *See Hill v. Hill*, 53 S.W.3d 114, 116 (Mo. banc 2001).

While Husband acknowledges that Wife is not required to exhaust her assets to qualify for an award of maintenance, he first contends that the trial court should have taken the property division into account in setting the amount of monthly maintenance. Specifically, he takes the position that the trial court should have considered the interest income that Wife could earn from her share of the property division.

■ We note that Husband points to no place in the record where this issue was raised before the trial court. Nor have we, upon a cursory review of the record on appeal, found anywhere where Husband presented that issue to the trial court. In particular, his Motion for Reconsideration is silent on the issue. Generally, we will not consider arguments raised for the first time on appeal. *See, e.g., Clarke v. Clarke*, 983 S.W.2d 192, 196 n. 2 (Mo.App.1998). At best, we may exercise our discretion to engage in plain error review, but will not reverse on that basis unless we determine that a manifest injustice of miscarriage of justice has occurred. *See In re Marriage of Lawry*, 883 S.W.2d 84, 89 (Mo.App. 1994).

■ We recognize that, in determining the propriety and amount of a maintenance award, the trial court has an obligation to consider what income a spouse could receive through investment of marital property. *See Van Natter v. Van Natter*, 988 S.W.2d 110, 113 (Mo.App.1999); *Jung v. Jung*, 886 S.W.2d 737, 739 (Mo. App.1994). The court cannot make that determination in a vacuum, however. *C.f.,*

*Anderson v. Anderson,* 5 S.W.3d 535, 537 (Mo.App.1999) (trial court presented with evidence of income spouse could receive through investment of property received in dissolution). Here, there was no evidence offered by Husband as to what interest income Wife might be expected to receive from the property awarded to her. Instead, Husband is left speculating on appeal as to what rate of return Wife could earn on the property. We will not convict the trial court of plain error in failing to consider a matter that was not put before it by either party and where there was no evidence in the record from which the court could make a *sua sponte* determination regarding that matter.

Husband also argues, however, that the trial court failed to take into account the fact that Wife currently earns $600 per month in her part-time employment. Wife responds that that income will be consumed by the income taxes she will incur as a result of the maintenance award. The trial court heard testimony regarding the tax implications of the proposed maintenance award, and we find no indication in the record that the trial court did not properly consider Wife's part-time income and the tax consequences of the maintenance award in setting the amount of that award.

Husband also takes the position that the amount of the award was inappropriate in that Wife is not working full time. Wife counters that she was working toward qualifying for schooling to become a radiology technician and that she would be unable to work full-time once she entered that program.[2] Once she completes that program, there is a strong likelihood that she will be able to fully meet her own expenses and become self-supporting.

The trial court did not abuse its discretion by not requiring Wife to work full time or reducing the maintenance award due to her failure to secure full-time employment while she is pursuing her educational goals.

In reviewing the record and the arguments of the parties, we conclude that the trial court did not abuse its discretion in setting the amount of monthly maintenance to be paid to Wife. Point denied.

IV. Termination of the Maintenance Award

 Having concluded our review of Husband's points on appeal, we turn to the single issue raised by Wife in her cross-appeal. She contends that the trial court abused its discretion with regard to the maintenance award by providing that the maintenance payments would terminate three years following the decree. While limited awards of maintenance are appropriate under certain circumstances, such awards "must be based on evidence showing either an impending change in the recipient spouse's financial condition or a reasonable likelihood that such a change will occur." *Burns v. Burns,* 829 S.W.2d 468, 469 (Mo.App.1992).

Here, there was evidence and testimony that Wife was pursuing education towards becoming a radiology technician. However, she has not yet been accepted into the program. Depending on the length of time that Wife would have to wait before being allowed to enter the program, the possibility existed that Wife would not be able to complete the program before the maintenance award expired in three years. Further, while Wife was hopeful of gaining employment sufficient to meet her needs

2. Awards of maintenance are often justified in circumstances where a spouse needs to pursue further education to become self-support-ing. *See, e.g., Kovacs v. Kovacs,* 869 S.W.2d 789, 793 (Mo.App.1994).

following graduation, even viewing the evidence in the light most favorable to the judgment, it appears speculative to this court to assume that she would be able to find such employment immediately upon graduation. Under such circumstances, the trial court abused its discretion. *See id.* at 470. Should Wife's financial circumstances change to the point that she is self-supporting, she fails to pursue her educational goals, or other circumstances arise which render the amount of monthly maintenance inappropriate, Husband may seek modification of his maintenance obligation.

Wife's sole point on cross-appeal is, therefore, granted. Under our authority pursuant to Rule 84.14, we may enter the order that should have been entered by the trial court. Husband shall continue to pay maintenance to Wife until such time as it is determined, in an appropriate proceeding, that modification or termination of the maintenance award is appropriate.

PAUL M. SPINDEN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.